

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable T. S. Painter
Acting President
University of Texas
Austin, Texas

Dear Sir:

Opinion No. 0-7126

Re: Whether a person of negro
ancestry, otherwise quali-
fied for admission into the
University of Texas, may be
legally admitted to that
institution.

In your letter of February 26, 1946, you have requested
an opinion from this office relative to the above subject.

The facts which have occasioned your request may be
briefly summarized. A negro, Heman Marion Sweatt, of Houston,
Texas, has applied for admission as a student in the law school of
the University of Texas, claiming that the University is the only
state institution of higher learning in this State furnishing faci-
lities and instruction for the proper training in the profession of
law. The applicant, who is a citizen of Texas, is scholastically
qualified for admission. When making the application, Sweatt was
accompanied by a committee representing the interests of the negro
citizens of this State in procuring immediate public higher educa-
tional facilities and instruction for negroes in various professions.
It appears from your letter that this is to be a test case, and
that the case of State ex rel. Gaines v. Canada (305 U.S. 337, 59
S. Ct 232, 83 L Ed 208) is relied upon as authority for the
position of the applicant and the committee. It is also noted that
it has not been the policy of the University to admit negroes as
students and that this is probably the first instance in which a
negro has presented himself for registration as a student.

In this opinion, it has been assumed that the application
was made in good faith and the question presented has been determined
on a consideration of (1) the law of Texas regarding the separation
of races in institutions of higher learning and (2) a consideration

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

of such law in the light of the 14th Amendment to the Constitution of the United States, guaranteeing equality of privileges and immunities to citizens.

The wise and long-continued policy of segregation of races in educational institutions of this State has prevailed since the abolition of slavery, and such policy is found incorporated not only in the Constitution of the State of Texas (see Article 7, Sections 7 and 14) but also in numerous related statutes (see Articles 1688, 2638, 2644, 2719, 2749, 2900, 3221, 3259-a and S.B. 228, Chap. 308, page 506, Acts 49th Legislature, 1945). The constitutionality of such a policy and of laws in accord therewith has been repeatedly sustained (see State ex rel. Gaines v. Canada, supra; Plessy v. Ferguson, 163 U.S 537; McCabe v. Atchison, T. & S. F. Ry. Co., 235 U.S. 151; and authorities there cited).

The controlling case as to whether the policy of segregating races in Texas operates to "abridge equal privileges and immunities of citizens of the United States" is State ex rel. Gaines v. Canada, supra. In that case, a fact situation similar to the one here presented was before the court. Therein the Supreme Court of the United States held that it was unquestionably the duty of a State to provide equal educational advantages within the State and that if such was not done it would constitute a discrimination in violation of the Constitution of the United States. The court's decision was based principally upon the fact that the Missouri statutes (Section 9618 and 9622) left the establishment of equal educational advantages to the discretion of a Board of Curators, "when necessary and practicable in their opinion," and it was clear that if a mandatory duty had been imposed on the Board to provide such advantages, it would have constituted no violation of the Federal Constitution.

This office, like the courts of this State, is bound by the decisions of the Supreme Court of the United States and in consequence there is no doubt that if equal educational advantages are not provided for the applicant within the State, he must be admitted to the law school of the University of Texas.

It is not required, however, that the State maintain in a condition of idleness and non-use facilities to afford the applicant these advantages (see Bluford v. Canada, 32 Fed. Supp. 707 - appeal dismissed 119 F (2) 779; State ex rel. Michael, et al. v. Witham,

supra). The State has a constitutional right to furnish equal facilities in separate schools if it so desires and if the State has made provision for such facilities for negroes and has placed a mandatory duty upon any of its officers, the applicant is not deprived of any constitutional right until application has first been made to the proper authorities and the applicant's rights have been unlawfully refused (see Gaines v. Canada, supra; Bluford v. Canada, supra). The State is entitled to a reasonable notice that the facilities providing equal educational advantages are desired before its established policy of segregation is abrogated; and a refusal by the designated authorities to provide facilities may not be anticipated (See Bluford v. Canada, supra; and State ex rel Michael v. Witham, supra).

The rights of the applicant in the instant case are, therefore, controlled by the import of Senate Bill 228, Acts 49th Legislature, 1945, Chapter 308, page 506, which was effective June 1, 1945, and in Section 2 of which it is provided:

"Whenever there is any demand for same, the Board of Directors of the Agricultural and Mechanical College, in addition to the courses of study now authorized for said institution, is authorized to provide for the establishment of courses in law, medicine, engineering, pharmacy, journalism, or any other generally recognized college course taught at the University of Texas, in said Prairie View University, which courses shall be substantially equivalent to those offered at the University of Texas." (Emphasis added)

This Act provides for instruction for the colored people of this state substantially equivalent to that offered at the University of Texas and, if mandatory, equal educational advantages for negroes are thereby provided. In determining whether an Act is mandatory or only permissive the intent of the Legislature should control and no formalistic rule of grammar or word form should stand in the way of effectuating the legislative intent (Horack's Sutherland Statutory Construction, Sections 2802, 2803, Volume 2, pages 215, 216. If a statute confers authority on a public officer which concerns the public interest or the rights of third persons, it is mandatory although couched in permissive language (39 Tex. Jur., Sec. 17) and this principle has been announced by the Supreme Court of Texas (see McLaughlin v Smith, 148 S.W. 288) when it was said that "a direction contained in a statute, though couched in merely permissive language, will not be construed as leaving compliance optional when the good sense of the entire enactment requires its provisions to be deemed

compulsory," and that permissive words should be construed as mandatory when used to clothe a public officer with power to do an act which ought to be done for the sake of justice or which concerns the public interest or the rights of third persons. Further, it must be presumed that the Legislature had knowledge of the decisions of the courts concerning the same subject matter and did not intend to pass an Act which, if only premissive, would not meet the requirements of such decisions.

The Act of 1945, then, is mandatory and imposes a clear duty upon the Board of Directors of the Agricultural and Mechanical College to provide at the Prairie View University instruction in the courses named therein "whenever there is any demand." A demand by only one individual is sufficient. Specifically, in the instant case, the Board must provide legal training substantially equivalent to that offered to white students at the University of Texas on the applicant's demand therefor.

A detailed discussion of the matter of appropriations to enable the Board of Directors to discharge their duty in the premises is not within the scope of this opinion However, after an investigation thereof it is not believed that this presents any obstacle to providing legal instruction for the applicant after demand and reasonable notice.

It should also be noted that if equal educational advantages are provided for the colored people of this State, it makes no difference whether such is done in a constitutional or statutory school and it is not therefore necessary to discuss the nature of Prairie View University or the establishment of a "College or Branch University" pursuant to Article 7, Section 14, of the Constitution.

All of the foregoing considered, it is concluded that the segregation of races in educational institutions in Texas may not be abrogated unless and until the applicant in good faith makes a demand for legal training at Prairie View University, gives the authorities reasonable notice, and is unlawfully refused.

Accordingly, you are advised that the applicant should at this time be refused admission to the University of Texas.

Yours very truly

APPROVED MAR 16 1946

Grover Sellers
ATTORNEY GENERAL OF TEXAS

G´
J_ _ ms      ATTORNEY GENERAL OF TEXAS